Judge Robertson
delivered the opinion of the court.
The town of Maysville was established^ by an act of the Virginia legislature, in 1787, and the land appropriated to it, was vested in trustees. See III. Littell’s Laws, 566. John May had a patent for 800 acres, on the Ohio, including the town; and May and Kenton, for themselves, and as trustees for Douglass’s representatives, had a patent for five acres, bounded on the north by the Ohio, and east by Limestone creek. May’s 800 acres were also bounded on the north by the Ohio. The patent calls for the river and to lie on it. These patents were issued before .the establishment of the town. The front street runs parrallel with, and near to the river. There are no lots between it and the river; but there is some vacant ground from this street to the margin of the river. This interjacent ground belongs to the trustees, never having been sold or otherwise appropriated by them.
The following orders have been made for establishing ferrys at Maysville:
In 1794, the county court of Mason, granted a ferry to Benjamin Sutton, who owned two lots on the front of water street. In 1801, the same privilege was re-granted to him by the court.
In 1797, a ferry was granted to Edmund Martin, by the county court.
In 1808, a ferry was granted, by the county court, to Jacob Boon.
Feri,v ma forfeited by non-user. But to consummate forfei-is ^"Vthe **' proprietor.
In 1818, a ferry was granted, by the court, to j. K. Ficldin, and in 1823, another ferry was granted, by the court, to Benjamin Baylies.
Bonds with security, were executed by the grantees respectively. The ferrys of Ficklin and Baylies have not been in operation for two or three years past. Those of Sutton, Martin and Boon, have beeh in operation ever since their establishment. Boon and Martin are both dead. Sutton sold his lots and ferry to Armstrong. Powers and Campbell, who attended to the ferrys granted to Boon ánd Martin, jive in the state of Ohio. Armstrong resides in Maysville.
On the 11th of September, 1827, a summons issued by an order of the county court of Mason, against the heirs of Jacob Boon, and against Armstrong, Powers and Jeremiah Martin, to show cause why the trustees of Maysville should not have a ferry granted to them, for the benefit of the town, across the river, •opposite to the town. They appeared and resisted the grant; whereupon, the court refused to establish a ferry for the trustees, and théy have appealed to this court.
They insist that the ferrys granted to Ficklin and Baylies, have been forfeited by non-user, and that the grants to the others were all void, because they did not own the ground to the edge of the water; and because the county court had no authority to grant ferrys, when the orders were made for establishing these. They also contend that some of the grants have expired, by death and alienations of the grantees.
The defendants deny the right of the trustees to appeal, and urge, in opposition to their right to a ferry, that they are not qualified to receive and enjoy such a grant; that they do not own the land on the river; and that the orders for establishing the ferrys now in operation, were legal and valid.
There can be no doubt, if the fact of desuetude be established, that Ficldin and Baylies have forfeited the privileges granted to them. But that fact cannot be decided collaterally. Before the forfeiture can *226 be ascertained, a summons must issue against’them* to show cause why their privileges shall not be surrendered. Cotton vs. Huston, IV. Monroe, 290.
County court cannot grant ferry on Ohio river, except to those owning land on the river.
The county courts have no authority, and never had, to grant ferrys on the Ohio river, to any except owners of land on the river. Jefferson Seminary vs. Wagnon, II. Marshall, 379.
As the authority is special and limited, an order granting a ferry to any other person than the owner of the land, is void. And as it is an act without any authority, it is not necessary to appeal from the order to this court, to reverse and nullify it; as it would be, if the court had jurisdiction, and had only proceeded irregularly or decided erroneously. Such an order in favor of one who does not own the land, may be treated as a nullity, whenever and wherever it may be necessary to notice it.
Butalthough the deed from the trustees for Sutton’s lots, does not convey any ground north of the front street, yet we are inclined to think that he owned the f;round fronting his lots, from the street to the river, n approving and reporting the plan of the town, in 1796, the trustees, among other things, subscribed their names to the following agreement: “It is agreed by the trustees of said town, that Benjamin Sutton, by giving fifty feet, as per plan, on the lower end of his íots, No. 15 and 16, to enlarge water or front street, is to have the privilege of his houses to remain where they stand, and also the said lots to include his said houses, to continue down to the river.”
This fact has nol been noticed, or if noticed, it has not been suggested by counsel. And, therefore, it is possible that there may be some reason why it should have no effect. We perceive none, however. If the fifty feet were given up, (as we suppose was done,) Sutton had a right to an extension of his lots, to the water’s edge. However, as will hereafter appear, it is not material to decide this matter now.
The county court had no authority to establish ferrys on the Ohio, until 1806. See I. Digest, 391. But that act confirmed all precedent grants by the county court, which had been regularly made. Of *227 coarse, if Sutton owned the ground to the river, the order establishing his ferry, in 1801, was affirmed, and declared valid, by the act of 1806. If Boon bad owned the ground on the river, the order in his favor, in 1808, would have been good. We cannot concur with the counsel for the appellants, in his construction of the act of 1808, (III. Littell’s Laws, 466,) vesting the trustees of Maysville with the jurisdiction and control of the ground, between the front street and the river. This was not intended as a repeal of the act of 1806, nor did it empower the trustees to establish Ferrys. If it did, there was no. necessity for their application, in this case, to the county court, nor for their appeal to this court.
ohicfriver^is alienable and descendable ™,th wit¿ ferrys on other rivetsi
Nor can we admit the conclusiveness of the argument, which has been employed to persuade us to decide that the grant of a ferry is always a personal privilege, which ceases with the death or alienation of the grantee. As no one can be the recipient of su.ch a grant on the Ohio, except the owner of land on the river, the grant to him is a franchise, incident to and growing out of his title to. the land. It is a hereditament, which descends with the land to his heirs, and passes to his vendee by alienation of the right to the land. It is, therefore, not like a tavern license which is personal, but is like a right of way, or a right to a toll bridge. It is indeed, defined by Jacobs to be a right of way, for which toll may be exacted. A grantee of a ferry must be the owner of the land, whether he be trust worthy or not. It is true that the grantee must execute bond. But we would suppose that this bond maybe enforced against him or his representatives, for any breach, by either them or his alienee, or any other person who may use the privilege under him, whether before or after his death. If, during his life, he suffer any person to manage the ferry, who shall abuse the privilege, he is responsible. Why should he or his estate not be equally responsible for any abuse, by his vendee or his heir, who derive their right to the ferry from him?However, this may be, (and we do not positively decide it,) a ferry on the Ohio is alienable and descen-dible with the land. We need not say whether this, would be the case with ferrys on other streams, where- *228 they may be granted to persons who do not own land. It will be time enough to decide this question when it shall be judicially presented.
Trustees of Maysville may receive grant of ferry.,
Franchise may be granted to natural or utidcial person.
With the exception of the ground in front of Sutton’s lots, (and we have not said, positively, that even that was Sutton’s,) we have no doubt that the trustees of Maysville owned and yet own, all the ground in said town, between the front street and the river; and we have as little doubt that they have capacity to take and use the grant of a ferry. All the lot holders in the town, if the lots adjoined the river, might receive a joint grant of a ferry, if, in such case, the legal title were in the trustees, there can be no reason why they could not be equally capacitated to receive the grant, for the benefit of the town. The whole title to the land on the river, is in them, (with the exception which has been suggested.) If a ferry cannot be granted to them, therefore, none can be granted at all. The law authorizes ferrys to be granted to the owners of the land. It is not material whether the title be joint or several; whether it be held by one or by many; nor whether it be held in trust or* in one’s own right. A franchise may be granted either to a natural or artificial person; to an individual or a corporation, and a ferry is a franchise real. II. Ral. Ab. 191; II. Bla. Com. 38. It is a common highway. Ia. Law Dc. 7; Ferry, 40.
It is peculiarly proper that trustees of towns should be the depositories pf such trusts as ferrys. They are established for the benefit of the public, as well as for the advantage of the grantees. And whether the general interest or that of the town of Maysville be considered, it would be more expedient that the citizens of the town, through their appointed organs, should be responsible for the proper management of a ferry, at their town, and enjoy the profits resulting from it, than that its control and emoluments should be vested in any one citizen.
The trustees owning the land on the river, and being capable to receive the grant of a ferry, for the benefit of the town, it would be immaterial how all or any of the other points had been decided; for there is no restriction to the number of ferrys at Maysville,, *229 except the discretion of the county court; and the act of 1798, I. Digest, 390, gives the right of appeal to any owner of land on the river, whose application for a ferry shall be rejected by the county court. This act is prospective and general.
Crittenden, Mills and Brown, for appellants; Denny, for appellees.
Hence the only question in this case, (whether there are other legally established ferrys at Maysville or not,) is, whether it would be expedient to grant one to the town? It is true that if there be already ferrys enough, and well attended to, the motives for granting another to the trustees, might be diminished. But still there would be no legal objection to it. And unless reasons of public expedience, could be shown, a ferry ought to be granted to them.
It is our opinion that it would be proper to accord to the trustees the privilege which they have solicited. The public cannot suffer by it, but must certainly be benefitted. And no individual has a right to object to it. The law in this particular, gives no exclusive right. It recognizes no precedence, even if all the parties were owners of land on the river. Besides, if the trustees be not allowed to have a ferry, there might be some difficulty in determining whether there is any at Maysville, unless Sutton’s be one, and still greater difficulty in ascertaining how any shall be established, or in whose favor. If the other ferrys have been illegally permitted, the reason is not only stronger, but is conclusive.
We are, therefore, clearly of opinion, that the county court ought to have established a ferry on the application of the trustees.
Wherefore, the order rejecting that application, is reversed and set aside, and the case remanded, with instructions to establish the ferry, on condition that the acting trustees, for the time being, execute bond according to law, binding themselves, as trustees of the town of Maysville, in the condition prescribed by law.